ALLSTAN's Adm'r. vs. CONTEE's Ex'r.

Allstan
vs
Contee

The assignee of a debt, resting on an open account, may under certain circumstances support an action of *assumpsit* thereon in his own name against the debtor. As where T C was indebted to J and C on open account, and C transferred his interest therein to J, who gave notice thereof to H, and he assumed payment thereof to J. Where there were facts and circumstances sufficient to be left to the jury for them to decide whether or not the defendant had promised to pay the plaintiff the claim sued for.

A having two claims against B on open account, B makes payment of a sum of money on account, without specially applying it to either claim. It is to be applied to the claim prior in point of date. Where the court held that the evidence offered took the case out of the act of limitations.

ERROR to *Frederick* County Court. This was an action of *assumpsit*, brought on the 23d of July 1812, by the surviving partner of *J.* and *C. Allstan*, (whose administrator the plaintiff in error is,) against the executor of the surviving partner of *T.* and *A. Contee*, (the defendant in error.) The declaration contained *five* counts. The *first* for articles properly chargeable in account. The *second* for money laid out, expended and paid. The *third* for money had and received. The *fourth* for money lent and advanced; and the *fifth* on an *insimul computassent* in the life-time of *T.* and *A. Contee*, &c. The defendant pleaded the general issue, and the act of limitations.

1. At the trial the plaintiff read in evidence the deposition of *Thomas Johnson*, taken by consent, who deposed, "that he was well acquainted with the firm of *J. Allstan* and *Brothers*, and that the firm of *T.* and *A. Contee* dealt extensively with them; that on the dissolution of the partnership of *J. Allstan* and *Brothers*, *J.* and *C. Allstan* took the balances of the former concern upon themselves, by the consent of the parties, and became responsible for their debts. That he was acquainted with *T.* and *A. Contee*, for many years; that they were partners in business and trade under the firm of *T.* and *A. Contee*, and had extensive dealings with the house of *J.* and *C. Allstan*. That he was in habits of intimacy with *J.* and *C. Allstan*, and knowing they were largely in advance for *T.* and *A. Contee*, he advised them to make out their accounts and have a settlement. That he saw these accounts after they were made and delivered to *A. Contee*, in *Contee's* possession in February 1807. That he at that time asked *A. Contee* to give him a draft on the house of *J.* and *C. Allstan* for a small sum due him from said *Contee*, as he (the witness,) knew they were the agents and correspondents of the *Contees*, but he refused to give the draft, saying and taking up the accounts of the *Allstans*, that *T.* and *A. Contee* owed those gentlemen upwards of, or between 9 and 10,000 dollars. That he has heard *A. Contee* say that there was due to the house of *J.* and *C. Allstan* more than $4000, for losses of shipments of tobacco made by *J.* and *C. Allstan* on account of *T.* and *A. Contee*. That it is the usage and custom of merchants, who credit for shipments of tobacco, to charge interest from the time of the credit, on the difference, if the proceeds of sale do not amount to so much as is credited or advanced. That *A. Contee* said the shipment was made to *Bremen*, and that they lost more than $4000 on it, being the difference between the net proceeds of sales of the tobacco, and the amount advanced or credited on the shipment to *T.* and *A. Contee* by the *Allstans*. That it is the usage and custom of trade in *Baltimore* between merchants, to charge interest on their advances, and credit interest on payments made to them. The plaintiff

**1818.**

*Allstan*
vs
*Contee*

further gave in evidence, that *A. Contee* died in the life-time of his father, and partner, *T Contee,* in February 1810, and that *T. Contee* survived him, and died in January 1811. The defendant was admitted to be his executor. He further gave in evidence, that the firm of *J.* and *C. Allstan* delivered their account current in 1807 to *A. Contee,* of the firm of *T.* and *A. Contee,* and that *A. Contee,* whilst the said account was in his possession in 1807, acknowledged that *T.* and *A Contee* were indebted to the firm of *J* and *C. Allstan* in the sum of between 9 and 10,000 dollars. He also proved that *C. Allstan,* of the house of *J.* and *C. Allstan,* died in April 1812. He then produced and read in evidence sundry letters admitted to have been written, some of them by *T. Contee,* and the others by *A. Contee,* to *J.* and *C. Allstan,* acknowledging themselves indebted to *J.* and *C. Allstan,* and promising payment, making mention of accounts received but not examined, &c. These letters are dated 16th of April 1802, 27th of May 1806, 20th and 28th of April 1807, 16th of July 1807, 18th of August 1807, 15th and 29th December 1807, 2d July 1809, 5th of January 1808, and the 14th of January 1810. The defendant then read in evidence the account filed by the plaintiff No. 1, it being the account declared upon in the first count of the plaintiff's declaration; and also the accounts produced by the defendant, No. 2, 3, 4 and 5. No. 1 is an account of *T.* and *A. Contee* with *J.* and *C. Allstan,* the first item in which, on the 5th of December 1803, is "To balance due *J. Allstan* and *Brothers,* $22,179 86," and stating a balance due on the 24th of August 1810, of $4479 50 for principal, and $2717 55 for interest, and charging afterwards in that account, on the 23d July 1810, "To the widow of *John Langs,* Son & Co. for loss on two shipments, &c. $4165 57, and charging cash paid for pork, $4 25, and charging interest on $4165 57. No. 2 is an account of *T.* and *A. Contee* with *J. Allstan* and *Brothers,* commencing in July 1803, and ending on the 3d of December 1803, charging a balance then due of $21,492 97. No. 3 is an account of *T.* and *A. Contee* with *J* and *C. Allstan,* commencing on the 5th of December 1803, with a charge of "Balance as per account rendered $22,179 86." In this account is a credit on the 10th of December 1803, of "Cash received of *A. Contee,* $6400;" another credit on the 30th of July 1804, of "*T.* and *A. Contee's* adventure per ship General *Mercer* to *Bremen,* $15,352 15;" and also a credit on the 3d of August 1804, of "*T.* and *A. Contee's* adventure per ship *Nancy* to *Bremen,* $3505 92;" closing with a balance due on the 13th of August 1804 of $4464 32. No. 4 is an account of *T.* and *A. Contee* with *J.* and *C. Allstan,* commencing on the 13th of August 1804, with a charge of "amount of debts as per account rendered of this day, $35,279 71;" and crediting on the same day, "by amount of credits as per amount rendered of this date $11,957 83;" closing with a balance due on the 4th of September

1804, of $9441 58. No. 5 is an account of *T.* and *A. Contee* with *J.* and *C. Allstan*, charging balance per account rendered in June 1804, of $9441 58, and closing on the 24th of August 1810, with a balance due of $13,909 26; which accounts, so produced by the defendant, were rendered by *J.* and *C. Allstan* to *T.* and *A* *Contee*, and contain an entry in 1803, to the debit of *T.* and *A. Contee*, of $22,179 86. of a debt due to the former firm of *J. Allstan* and *Brothers*, then composed of *J. H.* and *C. Allstan*, of which firm *J.* and *H. Allstan* are still living. And the plaintiff offered the above evidence to prove that *T.* and *A. Contee* were in possession of the accounts of *J.* and *C. Allstan* by them rendered, containing the said debit, before and at the time they acknowledged the sum due from them to *J.* and *C. Allstan*, and promised payment thereof; and that in this action they were liable to be charged with the debt. The defendant then prayed the court to direct the jury, that in forming their verdict they are not to consider as a charge against the defendant, any balance originally due to *J. Allstan* and *Brothers*. And this opinion and direction the Court [*Shriver* and *Nelson*, A. J.] gave. The plaintiff excepted.

2. The plaintiff then prayed the opinion of the court to the jury, that if the jury find from the evidence that *J.* and *C. Allstan* had accounted with the firm of *J. Allstan* and *Brothers* for the sum due from *T.* and *A. Contee*, and that *T* and *A. Contee*, with a knowledge that *J.* and *C. Allstan* had settled said balance for them with *J. Allstan* and *Brothers*, promised to pay the same to *J.* and *C. Allstan*, and that the same was debited to them, with other transactions with *J.* and *C. Allstan*, with the consent of *T.* and *A. Contee*, that then the plaintiff is entitled to recover. Which opinion and direction the court refused to give to the jury; because, in their opinion, no evidence of the supposed facts stated in this prayer had been given to the jury. The plaintiff excepted.

3. The plaintiff then prayed the opinion of the court to the jury, that the testimony contained in the deposition of *T. Johnson*, and the letters of *T.* and *A. Contee*, and their respective promises to pay *J.* and *C. Allstan* the balance on their account stated, after *T.* and *A. Contee* had for a length of time been in the possession of the said account stated, containing the charge against them of the balance due to *Allstan* and *Brothers*, and the accounts read by the defendant to the jury, is competent and proper evidence to be left to the jury, to prove—1st. That *J.* and *C. Allstan* had accounted with the firm of *Allstan* and *Brothers* for the debt due them from *T.* and *A. Contee*. 2d. That *T.* and *A. Contee* had notice of such fact, and approved of it by their subsequent promises to pay the said balance to *J.* and *C. Allstan*; and prayed the court to be permitted to address the jury on the above evidence to establish those

**1818.**

Allstan
vs
Contee

facts. This prayer also the court overruled. The plaintiff excepted.

4. The plaintiff then proved that the firm of *Allstan* and *Brothers* was dissolved on the 31st of December 1803, and the firm of *J.* and *C. Allstan* commenced on the 1st of January 1804. He then read the account produced by the defendant, containing a credit of $6,400, made by *A. Contee,* under the date of the 10th of December 1803, during the partnership of *Allstan* and *Brothers,* and before the partnership of *J.* and *C. Allstan,* and prayed the opinion of the court to the jury, that the same entry in the account filed by the plaintiff does not preclude or debar the jury from placing the said sum to the credit of the balance due *Allstan* and *Brothers* from *T.* and *A. Contee.* if the jury, from the whole evidence, should be of opinion that the said payment was made to *Allstan* and *Brothers* before the partnership of *J.* and *C. Allstan* had existence; and that the jury might rectify any error in said account, if in their judgment, on the whole evidence, any error existed either in the debits or credits. This opinion the Court, [*Shriver.* A. J.] also refused to give to the jury. The plaintiff excepted.

5. The plaintiff then proved by a witness, that he (the witness,) as the agent of *T.* and *A. Contee* in 1803, purchased large quantities of tobacco for them, which was, by their direction, in that year shipped to the house of *Allstan* and *Brothers,* and by them in that year received; that the witness purchased a part of the said tobacco by drafts of *T.* and *A Contee* on the house of *Allstan* and *Brothers.* He then read in evidence the letter and accounts of Widow of *John Langs, Son,* & Co. The letter is dated *Bremen,* 22d of April 1805, addressed to *J.* and *C Allstan,* giving an account of the sales of 50 hhds. of tobacco by the *Nancy*                 4,318

And 205 by the General *Mercer·*           17,936

                            R 22,254

The accounts of sales of the several hhds. of tobacco so shipped and the prices. The account of the sales of the 205 hhds. commenced on the 5th of October 1804, and ended on the 5th of March 1805, and amounted to R 25,969 37, and deducting the charges, &c. left a balance of R. 17,936 to the credit of *J.* and *C. Allstan.* The account of the sales of the 50 hhds. commenced on the 7th of December 1804, and ended on the 15th of February 1805, amounting to R. 6,342 10, and deducting for charges, &c. left due R. 4,318, to be credited to *J.* and *C. Allstan.* The defendant then read in evidence the accounts X and Z, rendered to *T.* and *A. Contee* by *J.* and *C. Allstan,* the first being an account of 205 hhds. tobacco shipped to *Varel* for account and risk of *T.* and *A. Contee,* per the ship General *Mercer,* and consigned to

Widow of *John Langs*, *Son*, & Co. merchants, *Bremen*, the net proceeds after deducting charges, &c. amounting to $15,352 15; and the second an account of 50 hhds. of tobacco shipped to *Vance*, for account and risk of *T.* and *A. Contee*, per the ship *Nancy*, and consigned to Widow of *John Langs*, *Son* & Co. merchants, *Bremen*, the net proceeds being, after deducting charges, &c. $3,505 91; and also produced the accounts filed by the defendant. The plaintiff then gave in evidence, that the entries in said accounts, under date of the 30th of July and 3d of August 1804, of $15,352 15, and $3,505 91, were for tobacco shipped by *T.* and *A. Contee* to the house of *Allstan* and *Brothers*, before the house of *J.* and *C. Allstan* had existence. He then prayed the court to direct the jury, that if they believed from the evidence that the firm of *T.* and *A. Contee* repeatedly acknowledged they owed the firm of *J.* and *C. Allstan* the debt due them; and if it appears from the accounts exhibited to the jury, that no such sum could be due to *J.* and *C. Allstan*, unless the above credits were applied to the balance due *Allstan* and *Brothers;* and if the jury find from the evidence that the tobaccoes for which the said credits are given, were shipped to the house of *Allstan* and *Brothers*, and not to the house of *J.* and *C. Allstan*, and that the accounts produced contain debits and credits relating to both firms, and that any mistake has been made, that then the jury are not precluded or debarred from rectifying any such mistake, if they find one to exist, but may apply said credits, if in their judgment on the whole evidence it is proper, to the account of *Allstan* and *Brothers*. This direction the Court [*Shriver*, A. J.] refused to give to the jury. The plaintiff excepted.

6. The defendant then prayed the opinion of the court to the jury, that upon the whole evidence given in this cause, the facts proved were not sufficient in point of law to entitle the plaintiff to recover. And this opinion the Court, [*Shriver*, A. J.] gave to the jury. The plaintiff excepted. Verdict and judgment for the defendant. The plaintiff having afterwards died, his administrator brought the present writ of error, returnable to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

*Taney*, for the Plaintiff in error. The facts established by the record are, that *T.* and *A. Contee* being partners in trade, became indebted to the house of *Allstan* and *Brothers*, composed of *J. C.* and *H Allstan*. *Allstan* and *Brothers* dissolved partnership on the 31st of December 1803, and the house of *J.* and *C. Allstan* began business on the 1st of January 1804. By agreement between the parties, *J.* and *C. Allstan* took the balances due to *Allstan* and *Brothers*, and became responsible for the debts due from them, and *T.*

1818.

Arstan
vs
Contee

1818.

Allstan
vs.
Contee

and *A. Contee* had notice of this arrangement, and assent-
ed to it.  The balance due from the *Contees* was brought
into their account with *J.* and *C. Allstan.* The account
was rendered to the *Contees* with this item in it, and they
promised to pay it.  It appears also from the accounts, that
the account of *Allstan* and *Brothers,* and *J.* and *C. Allstan,*
with the *Contees,* were in some items blended together, and
what properly belonged to the one was put in the other.
Upon this statement it is conterded—1.  That the plaintiff
below was, and his administrator, the plaintiff in error, is
entitled to recover the balance formerly due to *Allstan* and
*Brothers.*  2.  That the plaintiff in error is entitled to re-
cover on the count for sundry matters properly chargeable
in account, or on the *insimul computassent* .  3.  That if
there was any mistake by putting in the account of *J.* and
*C. Allstan* credits to *T.* and *A. Contee,* which properly be-
longed to the account of *Allstan* and *Brothers,* the plaintiff
was not estopped from showing the mistake, and the jury
had a right to correct it.

On the *first point* he cited *Fenner vs. Meares,* 2 *W.
Blk. Rep.* 1269.   *Israel vs. Douglas,* 1 *H. Blk. Rep.* 239.
*Surtees vs. Hubbard,* 4 *Esp. Rep.* 204.   *Peake's Evid.*
240, 241; and *Onion vs. Paul,* 1 *Harr. & Johns.* 114.

*Magruder,* for the Defendant in error, cited *Freeland vs.
Heron,* 7 *Cranch,* 151; and *Hammersley vs. Knowlys,* 2
*Esp. Rep.* 666.

Johnson, J. delivered the opinion of the court.  The decla-
ration in this case is in the usual form, containing amongst
others, a count *on an account,* and an *insimul computassent.*
The questions which arose were as to the form of the ac-
tion, and as to the merits of the subject in controversy.

The facts, as the plaintiff offered evidence to prove, are
that *T.* and *A. Contee* were indebted to *J. C.* and *H. All-
stan,* under the firm of *Allstan* and *Brothers.*  The part-
nership of *Allstan* and *Brothers* was dissolved on the 31st
December 1803, and the next day *J.* and *C. Allstan* com-
menced business, and took upon themselves the collection
and payment of the debts which were due from and to
*Allstan* and *Brothers.*  *T.* and *A. Contee* were acquainted
with the dissolution of the first, and commencement of the
new partnership, and continued their dealings with *J.* and
*C. Allstan.*

In the account rendered by *J.* and *C. Allstan* to *T.* and
*A. Contee,* long before the suit was brought, they are charg-
ed with a *balance* which *was* due to *Allstan* and *Brothers,*
as *then* due to *J.* and *C. Allstan.*  And whether that item
could be recovered in this action, is the subject of the *first*
bill of exceptions.  In this bill of exceptions the plaintiff
offered evidence to prove, that *T.* and *A. Contee,* before
the account of *J.* and *C. Allstan* was presented to them
containing a charge for the above balance, had been furnish-
ed with an account by which that balance was ascertained
to have been due to *Allstan* and *Brothers,* and that with

this information on the part of *T.* and *A. Contee*, they acknowledged the balance as charged to be due, and promised the payment thereof. On this evidence "the defendant prayed the court to direct the jury, that in forming their verdict, they are not to consider, as a charge against the defendant, any balance *originally* due to *Allstan* and *Brothers.*" Which opinion and direction the court gave.

The broad ground taken by the court below, that if the debt was *originally* due to *Allstan* and *Brothers*, the suit could not be sustained, seems to rest on a principle, that the assignee of a debt resting on an open account, could in no instance support an action in his own name to recover such debt. The law on authority appears to be otherwise. In *Fenner vs. Meares*, 2 *W. Blk. Rep.* 1269, the assignee of a bond, on a promise by the obligor to pay him the debt, sustained an action of *assumpsit* on the promise. The principle, that in certain instances the assignees of debts may sustain actions in their own names, is also established in *Israel vs. Douglas*, 1 *H. Blk. Rep.* 239. *Surtees vs. Hubbard.* 4 *Esp. Rep.* 205. And in 2 *Peake's Evid.* 240, 241, the action was sustained in the name of two partners to recover a debt which was *originally* due to *one.* If then a suit can be sustained in the name of two to recover a debt originally due to one partner, surely no reason exists why *two* partners should not, in their own names, recover a debt which was due to three, when one of them has transferred to the others his interest, and when the debtor, with the knowledge of the fact, acknowledges the debt to be due, and promises them the payment. To the debtor it is of no moment in what right he is compelled to pay the debt provided he is not liable again for the money in a different right; but, as the payment to the assignee of an account or bond, would exonerate the debtor from the original creditor, so will a judgment on the assigned claim also discharge him from the original cause of action, whether the recovery is founded on a formal count stating the original debt, assignment and promise, or on an account disclosing the nature of the original transaction.

On the *second* bill of exceptions the court refused to give the opinion as prayed on the part of the plaintiff, that "if the jury find from the evidence that *J.* and *C. Allstan* had accounted with the firm of *Allstan* and *Brothers* for the sum due from *T.* and *A. Contee*, and that they, with a knowledge thereof, and that *J.* and *C. Allstan* settled with *Allstan* and *Brothers*, promised to pay the amount to *J.* and *C. Allstan*, then the action for that item was sustainable." The court below refused to grant the prayer, not because the law was against the application, but because the court were of opinion that there was no evidence of such facts. In this opinion we think the court were mistaken; for the various accounts disclosing the whole transaction, united with the repeated promises to pay, together with the parol evidence admitting a large sum to be due, were circumstances proper to be left to the jury.

The same considerations which induced the belief that the court below erred in the *second* bill of exceptions, are equally applicable to the *third.*

The *fourth* bill of exceptions, in which the jury were precluded by the opinion of the court from applying the payments made by *T.* and *A. Contee* to discharge the item in the account of *J.* and *C. Allstan,* which was due to *Allstan* and *Brothers,* is not very material to the merits of the cause; for as the plaintiff has a right to recover for that item, it is unimportant how the credits are applied. But this court are of opinion, that as the claim of *Allstan* and *Brothers* composed a part of the claim of *J.* and *C. Allstan,* and was prior to the debt due to *J.* and *C. Allstan,* without any special direction the payments ought to have been applied to that claim, more especially as the fund, from whence the money was received, was forwarded to *Allstan* and *Brothers* before the new partnership commenced, and there is nothing in the account, on which the suit is brought, to preclude such application.

These remarks are equally applicaole to the *fifth* and *sixth* bills of exceptions, except in the last, the defendant's defence, and the opinion of the court, would be sustained if the act of limitations barred the action. But this court are of opinion that the evidence takes the case out of the act of limitations.

This court are of opinion, that the court below were mistaken in the opinions given in all the bills of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.