JAMES A. STEWART *vs.* JOHN P. ROGERS, Surviving Partner of NATHAN ROGERS & Co.

In an action by a surviving partner, the declaration containing the usual common counts, in the form prescribed by the Act of 1856, ch. 112, the evidences of debt were accounts of transactions between the defendant and firms to which the plaintiff was successor, acting as agents for the defendant, under a written agreement—HELD :

1st. That to enable the plaintiff to recover, it was unnecessary to prove an acknowledgment of indebtedness, and an express promise by the debtor to pay the debt to the plaintiff; and that it was a matter of inference for the jury, from the facts proved, whether there was an assignment and transfer of the accounts from the old firm to the new, and whether the defendant assented to it, and promised, expressly or impliedly, to pay the balance to the plaintiff.

2nd. That the agency, like the accounts, might have been transferred with the knowledge and assent of the defendant, from the old to the new firms, but this transfer and assent must be manifested by some evidence that the defendant knew who constituted the new firms, and recognized them as his agents in the transactions referred to.

3rd. Where an agreement, with the object of securing ship-brokers for advances and liabilities incurred for a vessel or its owner, authorizes them to have said vessel registered in their names, they agreeing to surrender the same to the owner or his assigns, on payment of the amount that may become due them, and giving them the security required by other provisions of the agreement—HELD : That such an agreement makes an express reservation of a lien on the vessel for advances to said vessel, its owner, or his order, and for all liabilities therefor.

Apart from any agreement, although a mooted question, the better opinion seems to be, that a lien exists in behalf of the "ship's husband," for advances.

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

The clause of said agreement, relating to the compensation of the agents, was: "We hereby agree and oblige ourselves to manage the said vessels to the best advantage, according to our judgment, for the owner, and to pay to him or his order, from time to time, as they may accrue, any and all net profits arising therefrom, charging for our services such usual commissions as are generally charged"—HELD: That the agents' commission does not depend on the profitable result of any adventure, if they discharge their duty faithfully.

APPEAL from the Circuit Court for Dorchester county.

This was an action brought by the appellee against the appellant, on the 6th of July 1848. A full statement of the pleadings and evidence in the case, as well as all questions of law arising thereunder, will be found in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL and COCHRAN, J.

*Daniel E. Henry* and *Jervis Spencer*, for the appellant:

1st. The defendant's motion should have been granted, because the evidence objected to relates to matters of account between the defendant and partnership firms, of which the plaintiff is not the legal representative. The said firms are legally distinct from that of which the plaintiff is the surviving partner, and there is no evidence of any assignment, in writing, of the indebtedness shown by said accounts against the defendant, either to the plaintiff or to the firm of which he is the surviving partner; nor is there evidence of any unwritten equitable assignment of said indebtedness, made with the assent of the defendant, or supported by any promise from him to pay the same to the plaintiff, or to the firm of which he is the surviving partner. *Sto. on Part.*, secs. 254, 253, 244 and 334. 2 *Robs. Pr.*, 255. *Ch. on Cont.*, 537. *Onion vs. Paul*, 1 *H. & J.*, 114. *Owings' Excr. vs. Owings*, 1 *H. & G.*, 484.

*Lamar vs. Manro,* 10 *G. & J.,* 50. *Col. on Part.,* 62, *and note. Gow, on Part.,* 64, 244, 230, 231.

2nd. The instruction asked in the defendant's 1st and 2nd prayers should have been granted. There being no evidence whatever of an assignment, in writing, to the plaintiff, or the firm of which he is the surviving partner, of the defendant's alleged indebtedness to the firms which existed prior to July 1st, 1857, the Court, in admitting the testimony objected to by the defendant, to go to the jury, must have been of opinion, that the said testimony tended to prove an unwritten equitable assignment of said indebtedness. But such unwritten assignment, if proved, would give the plaintiff no right of action at law, in his own name, against the defendant, unless it was either made with his assent, or the defendant expressly promised to pay. There is no evidence, whatever, that the defendant assented to the making of any such assignment, or that he ever had knowledge of any changes in the firm of *Nathan Rogers & Co.,* other than that communicated by one of the witnesses. In this aspect of the testimony, nothing but an *express promise* to pay, by the defendant, could give the plaintiff a right to sue him at law.

3rd. That the contract of the 15th of October 1852, created a special agency, and was not such a *chose in action* as admits of assignment. Nathan Rogers and John P. Rogers, in the firm name of Nathan Rogers & Co., could not take upon themselves the execution and discharge of the agency created by the said contract, and charge the defendant on account thereof, without his knowledge and assent. The Court therefore erred in rejecting the defendant's 3rd prayer. *White vs. Davidson, et al.,* 8 *Md. Rep.,* 169.

4th. The instruction asked in the defendant's 4th prayer should have been granted. The losses referred to, all occurred after the first change in the firm; and the right or authority to place any part of any cargo in the barque, on

JUNE TERM, 1862. 101

Stewart vs. Rogers, Surv. Part. of N. Rogers & Co.

the barque's account, being entirely derived from the agreement of the 15th of October 1852, it could not be assumed by other persons than those who were the parties to the said agreement, nor could they assign it. The defendant would not be responsible for any such losses sustained by other persons than those upon whom this right or authority was conferred by said agreement, unless before or at the time of putting in the cargo, he promised or agreed to be responsible therefor. Even a subsequent express promise to that effect would not avail, being *nudum pactum*.

5th. That the instruction asked in the defendant's 7th prayer ought to have been granted without modification. It was not calculated to mislead the jury, and the propriety of the charges for commission was one of the matters in dispute, and the defendant had a right to the instruction without modification. *Whiteford vs. Buckmyer & Adams*, 1 *Gill*, 127. *Chitty on Cont.*, 480. The addition to the prayer is not law. Commissions were to be allowed by the defendant, according to the stipulations of the special agreement creating the agency, and the usage therein referred to. The addition to the prayer asserts, in effect, that commissions were to be paid *for all acts* performed in execution of the agency, without reference to the agreement; provided only, in the performance of said acts, the party performing them acted with a proper knowledge of, and a proper regard for, the interests of the defendant.

On the point made under the first exception, as to the effect of the Act of 1825, ch. 117, see *Sothoron vs. Weems*, 6 *G. & J.*, 435. *Coates vs. Glenn*, 5 *Md. Rep.*, 121, and 433. See, also, 1 *Bouv. Law Dict.*, "*Ship-brokers*," 147. *Bro. Leg. Max.*, 387.

*Charles F. Mayer*, *Grayson Eichelberger* and *Charles F. Goldsborough*, for the appellee:

The motion, the subject of the first exception, was pro-

perly denied.    Upon the testimony following that of the
accounts, the defendant is shown to be answerable on the
final balance of those accounts to the firm of Nathan Rogers
& Co., as it was composed at Nathan Rogers' death; all
the firms subsequent to the first one having been in effect,
recognized as successors to that first in reference to the
management of the vessels, and all matters embraced in
the accounts, and all successive balances of account of the
respective partnerships being merged, through Nathan
Rogers' rightful control of those balances, in the balance
finally resulting to Nathan Rogers in his ultimate partner-
ship with John.    Besides, the defendant has given no point
to the motion, as required by the Act of 1825, ch. 117, but
has virtually offered a general prayer, that the plaintiff,
on all the evidence, is not entitled to recover.

The first and second prayers (2nd bill of exceptions) are
erroneous, at least in requiring as conditions to the plain-
tiff's recovery, as survivor of the last constituted firm of
Nathan Rogers & Co., not only knowledge in the defendant
as to who made up that firm, but also an acknowledgment of
indebtment to that firm, and, moreover, an express promise
to pay the firm or plaintiff what may be claimable on all the
transactions and accounts of the preceding firms.    At the
farthest, either one of the last two terms of the requisition
would suffice for title to recover.    But a recognition of the
substitutional rights of the successive firms, and that to be
even implied from circumstances, and to be imputed by law
in the absence of defendant's inquiry as to partners, and a
promise thence to pay, to be inferred, will suffice for the de-
fendant's liability to the plaintiff, as surviving partner of
the last firm; especially as Nathan Rogers, the primary and
essential agent in the defendant's view, and his contract,
continued the principal in the last and every preceding
firm.    It was sufficient, too, to have testimony (as we have)
whence to infer assignment or surrender to Nathan Rogers,

and his successive associates, of all claims of extinguished firms. Beside all which, the precedent balances merge in the final claim of the last firm. The balance of each firm's account (on each the defendant being the debtor) was settled in the account with the succeeding firm. Nathan Rogers was competent, as a partner in each firm, so to extinguish those balances. Charles Butler shows, too, that Nathan Rogers and John were authorized to such effect, in being empowered to close all business and accounts. His being examined as a witness, proves him divested of all interest, and in favor of the last firm. 7 *H. & J.*, 213, *Barger vs. Collins.* An express promise to pay was not necessary, even before the Act of 1829, ch. 50. 4 *H. & J.*, 351, *Allstan vs. Contee.* 16 *Pick.*, 321, *Armsby vs. Farnham.* An agency may be recognized by subsequent adoption and recognition. *Pars. Merc. Law*, 127 and 128. 5 *Barn. & Adol.*, 925, *Thompson vs. Percival.* 2 *Mees. & Wels.*, 483, *Hart vs. Alexander.* 4 *Metcalf*, 12.

The same considerations oppose the third prayer; and Nathan Rogers being a member of the last firm, made it a contingency assumed by defendant, as to who might be his associates in the firm. An actual knowledge in defendant on that subject, was not necessary for his liability to the last firm, constituted, as it might be, of any one or more with Nathan Rogers; his not inquiring, (if he did not inquire,) putting at his risk the fact as it might prove to be. Nathan Rogers was the man principally trusted, and Stewart was careless as to who might be associated with him; he makes no complaint on this score, nor of any loss on account of carelessness or negligence. 2 *H. & G.*, *Mitchell vs. Dall.* John P. Rogers, and all parties connected with these firms, are estopped by these proceedings from ever claiming again against Stewart, and this is all he can in justice demand. 1 *Phil. Ev.*, 360. 3 *Id.*, 370. *Story on Part.*, sec. 328. *Pars. Mer. Law*, 115. 2 *Md. Ch. Dec.*,

104      MARYLAND REPORTS.

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

157, *Drury vs. Roberts.* 31 *Eng. L. & Eq. R.,* 121. 12 *Ill. Rep.,* 298.

Stewart's silence was a waiver of all objection on the score of the change of the members of the partnership. 6 *H. & J., Allegre vs. Ins. Co.* He never made the objection when it could have been made, although he had every inducement to make it.

The principles asserted in refutation of the first and second prayers, condemn the position of the fourth prayer. The sixth prayer seems to claim the discharge of the defendant from all liability for his debt, upon the fallacy that the "Linda Steward" being security for the debt, is (inasmuch as she was, as alleged, unlawfully sold) to be regarded as constructively availed of, at a value equal to the amount of the debt; or, in consequence of the asserted illegal conversion, is to be treated as having been the only resort for payment of the debt. The proposition thus presented, cannot require argument to repel it.

The seventh prayer was granted, so far as to concede that commissions are forfeited where agency was unskilful or negligent, so as to yield no benefit to the defendant, but the Court below, by their clause added to the proposition, declared in effect, and properly, that where there was proper knowledge of the defendant's interests, and proper regard for them, in the conduct of the agent, there could be no unskilfulness nor negligence imputed; and that although no benefit might have flowed from the agency, commissions for even the unsuccessful service were claimable.

The following authorities were also cited on the part of the appellee: 10 *East.,* 104, *Peacock vs. Harris.* 2 *Har. Dig. Index,* 2203. 2 *Cromp. & Jerv.,* 139, 140, *Edensor vs. Hoffman.* 10 *Eng. C. L. Rep.,* 438, *Garrett & Bodenham, vs. Handley.* 13 *Md. Rep.,* 413, *Fouke vs. Fleming & Douglass.* 2 *Md. Rep.,* 16, *Glenn vs. Gill.* 35 *Eng. L. & Eq. Rep.,* 193, *In re Langmead's Trusts.* 8 *Ired. Eq.*

*Rep.*, 21, *Holmes vs. Holmes, et al.* 37 *Maine*, 408, *Milliken, et al., vs. Loring.*

Bowie, C. J., delivered the opinion of this Court:

The appellees sued the appellant on the 26th July 1858. The *nar.* contains the usual common counts, in the form prescribed by the Act of 1856, ch. 112, and a special count on an agreement. The defendant pleaded:

1st. That he never was indebted as alleged.

2nd. That he did not agree as alleged.

The plaintiff's original firm were the ship's husband, of two vessels, belonging to the defendant, which were placed under their management and control, on the terms and conditions in two papers, marked N. R. & Co., No. 1, and N. R. & Co., No. 2.

N. R. & Co., No. 1.

BALTIMORE, 18th October, 1852.

*Nathan Rogers & Co.*, Merchants, Baltimore, have full authority to take charge of the new barque "Linda Stewart" and brig "Thomas R. Stewart," both of Baltimore, under an arrangement I have made with them, as my agents in the control and management thereof, and the captains and all concerned, will govern themselves accordingly. Given under my hand. Signed—JAMES A. STEWART.

N. R. & Co., No. 2.

BALTIMORE, Oct. 15th, 1852.

James A. Stewart, of Cambridge, Dorchester county, Md., being the owner of a new barque which he has had built and fitted out, called "Linda Stewart," and also of the brig "Thomas R. Stewart," has placed the said vessels *with us*, to be managed by us, *as his agents*, to the best advantage, according *to our* judgment, and to facilitate the better employment of the said vessels, and to secure *us* for any necessary advances that *we* may make for the said vessels, or to James A. Stewart, or any liabilities that *we* may

14    v.19

106 MARYLAND REPORTS.

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

incur on account of the said vessels or order, the said Stewart has signed the necessary certificate, to enable *us* to have the said barque registered in *our names*, we hereby agree and oblige *ourselves to manage the said vessels to the best advantage, according to our judgment, for the said Stewart,* and to pay over to the said Stewart, or his order, from time to time, as they may accrue, any and all net profits arising therefrom, charging for *our services* such usual commissions as are generally charged; and we further agree and oblige *ourselves* to surrender up the said vessels and the control thereof to Stewart, his heirs, executors, administrators or assigns, at any time when he or they may desire the same, upon payment *to us* of any sum or sums that may be due to us, on account of the usual and necessary expenses of the said vessels, more than the profits arising from the said vessels, and all advances that may be made to the said Stewart or order, if any should be made, and securing us for any liabilities that we may incur, as aforesaid. We further agree, in case we put the said vessels, or either of them, *in for one-third of the cargo* on the vessel's account, where an adequate freight cannot otherwise be obtained, the said vessels, or either of them, or the said Stewart, are to be allowed for one-third of the profits thereon, and in case of loss by the said vessel or vessels being thus interested, the said vessel or vessels, or James A. Stewart, are not to be answerable for any such loss beyond the freight of the said vessel or vessels, respectively, for each respective voyage. It being hereby understood, in any event, that although the said barque is registered in *our* names, by the authority of the said Stewart, for the purposes aforesaid, that we set up no claim to the same, or any part thereof, or to the brig "Thomas R. Stewart," *other* than for any advances that may be made by us *on her or their account*, or to the said James A. Stewart or order, or for liabilities incurred as aforesaid, but the said barque "Linda Stewart" and brig "Thomas

JUNE TERM, 1862.          107

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

R. Stewart" belong of right to the *said Stewart,* and are subject at all times to his disposal, by the said Stewart, his heirs, executors, administrators or assigns, paying *to us* any advances that we make for him, more than the profits arising from the said vessels, according to this agreement, and securing us for liabilities incurred as aforesaid.

N. ROGERS,

NATHAN ROGERS, Jr.

CHARLES BUTLER.

Test:—*Henry Hartbin.*

These papers being admitted in evidence, the appellees proved that Nathan Rogers, Nathan Rogers, Jr., and Charles Butler, constituted the firm of Nathan Rogers & Co., from the 15th October 1852, (the date of the agreement,) to the 31st December 1853, and transacted all business connected with the management of the vessels, in said firm's name. That *Nathan Rogers, Jr.,* retired from the firm on the 31st December 1853, Nathan Rogers, Sen., and Charles Butler remaining, and constituting the firm until 1st March 1856, when John P. Rogers became a partner, and Nathan Rogers, Sen., Charles Butler and John P. Rogers constituted the firm from 1st March 1856, to July 1857, when Butler retired, and Nathan Rogers, Sen., and John P. Rogers composed the firm from the 1st July 1857, to 2nd July 1858, when N. Rogers, Sen., died, John P. Rogers surviving. That Charles Butler and N. Rogers, Jr., are still living; that John P. Rogers proceeded, as surviving partner, to settle the business of Nathan Rogers & Co., under the name of Nathan Rogers & Co., and continued the same business in the same name, without having any partner.

The appellee further proved that the original firm of N. Rogers & Co. took charge of the brig and barque belonging to the defendant, by virtue of the agreement of the 15th and 18th October 1852, and that the brig (until she was lost, shortly after the 27th December 1853) and the said

barque were managed by the firm of N. Rogers & Co.,. composed of partners, as before stated, according to the dates above mentioned. The appellee then produced sundry accounts current between the said brig and barque and owners, on the one side, and the firm of N. Rogers & Co. on the other, marked A, B, C, D, E, F, G, O, P and X, running from August 1st, 1853, to 1858, inclusive, which said accounts were produced at the trial, by the defendant, upon notice to produce them given at the bar, by the plaintiff's counsel. The plaintiff proved that account B was delivered in March 1856; C in October 1856; D in January 1857; E in June 1858; F in May 1858.; G in June 1858; O in April 1858; P and X in the Fall of 1856; that the barque was sold on the 18th June 1858, by John P. Rogers, at public sale, after due notice, and purchased by plaintiff, for $8,000; that the last voyage of the barque commenced in the life of N. Rogers, Sen., and terminated after his death; and all the items in said account, subsequent to the death of N. Rogers, Sen., except in regard to the sale of the barque, were incidental and necessary to the winding up of said voyage. The plaintiff also offered in evidence paper No. 6, being a duplicate of the original agreement, dated 27th January 1853, signed by Nathan Rogers and Charles Butler, to shew that the defendant was aware, at the date of No. 6, that N. Rogers, Jr., had retired from the firm. The plaintiff also offered all the correspondence between the firm of Nathan Rogers & Co. and the defendant, from the 18th October 1852, to 12th August 1858.

The plaintiff, by his counsel, having announced that he had closed his testimony, except as to rebutting evidence, the defendant, by his counsel, made the following motion to the Court:

"The defendant, by his counsel, moves the Court to rule out all testimony that has gone to the jury in reference to accounts current, or the items of account between Nathan

JUNE TERM, 1862. 109

Stewart vs. Rogers, Surv. Part. of N. Rogers & Co.

Rogers, Nathan Rogers, Jr., and Charles Butler, trading under the name of N. Rogers & Co., and the defendants, and in reference to accounts current, or the items of account between Nathan Rogers, Charles Butler and John P. Rogers, trading under the name of N. Rogers & Co., for the reason that it was objected to by the defendant when offered, as inadmissible, and admitted by the Court, with the understanding that it was to be followed up by the plaintiff, and the plaintiff has closed his testimony, and failed to follow it up by testimony sufficient to make it admissible ;" which motion was overruled by the Court, and the defendant excepted.

The defendant having offered certain testimony, and closed, submitted the following prayers, No. 1, No. 2, No. 3, No. 4, No. 5, No. 6, No. 7:

*Prayer No.* 1.—The defendant, by his counsel, prays the Court to instruct the jury, that if they believe, from the evidence, that Nathan Rogers and John P. Rogers, named in the declaration, on the 1st day of July 1857, formed a partnership for the purpose of conducting the shipping business, under the name and firm of N. Rogers & Co., and that the said Nathan Rogers, before the institution of this suit, departed this life, leaving the said John P. Rogers his surviving partner, that under the pleadings in this cause they cannot find a verdict for the plaintiff on account of any transactions between the defendant and any firm composed of other partners, unless they further believe, from the evidence, that subsequently to the formation of the said first mentioned firm, the defendant has acknowledged an indebtedness on account of said transactions, and expressly promised to pay the same to the said first mentioned firm, or to the plaintiff, as the surviving partner thereof.

*Prayer No.* 2.—The defendant, by his counsel, prays the Court to instruct the jury, that if they believe, from the

110 MARYLAND REPORTS.

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

evidence, that the defendant, on the 15th day of October 1852, was the owner of the brig "Thomas R. Stewart," and the barque "Linda Stewart," and that afterwards, on the same day, he placed the said vessels under the management and control of Nathan Rogers, Nathan Rogers, Jr., and Charles Butler, by virtue and according to the terms of the special contract executed by them on that day, and offered in evidence by the plaintiff, and that the said Nathan Rogers, Nathan Rogers, Jr., and Charles Butler were at that time partners, trading under the name and firm of N. Rogers & Co., and with the knowledge and assent of the defendant, afterwards transacted all business connected with the management of said vessels, in the firm and name of N. Rogers & Co., down to the 31st day of December, 1853; and if they further believe, from the evidence, that on said last mentioned day, the said Nathan Rogers, Jr., retired from the said firm, and the said Nathan Rogers and Charles Butler became partners, under the name of N. Rogers & Co., and took upon themselves the management of the said vessels, and continued to manage them in the said firm and name of N. Rogers & Co., down to the 1st day of March 1856, and on the said last mentioned day the said Nathan Rogers, Charles Butler and John P. Rogers, the plaintiff in this action, became partners, under the said firm and name of N. Rogers & Co., and took upon themselves the management of said vessels, and continued to manage them in the said firm and name of N. Rogers & Co., down to the 1st day of July 1857, and that on said last mentioned day the said Charles Butler retired from the said firm, and the said Nathan Rogers and John P. Rogers became partners, under the said firm and name of N. Rogers & Co., and took upon themselves the management of the said vessels, and continued to manage them in the said firm and name of N. Rogers & Co., down to the 2nd day of January 1858, and that on said last mentioned day the said Nathan Rogers departed this

life, leaving the said John P. Rogers his surviving partner, that then they cannot find a verdict for the plaintiff on account of any transactions connected with the management of the said vessels, or either of them, which occurred prior to the date at which the said last mentioned firm was formed, unless they further believe, from the evidence, that the defendant knew who composed said firm, and with such knowledge, acknowledged an indebtedness on account of said transactions, and expressly promised to pay the same to the said last mentioned firm, or to the plaintiff, as the surviving partner thereof.

*Prayer No. 3.*—That if they believe, from the evidence, the facts mentioned in the preceding prayer, that they cannot find a verdict for the plaintiff, on account of any transactions connected with the management of the said vessels, or either of them, which occurred subsequently to the formation of the said last mentioned firm of Nathan Rogers and John P. Rogers, trading under the name of N. Rogers & Co., unless they further believe, from the evidence, that the defendant *knew* who the partners were who composed the said firm, and with such knowledge recognized the said firm as his agents, for the management of the said vessels, or either of them.

*Prayer No. 4.*—That if they believe, from the evidence, that the defendant placed the barque "Linda Stewart," of which he was the owner, under the management and control of the firm of N. Rogers & Co., by virtue of the contract, dated on the 15th day of October 1852, and offered in evidence by the plaintiff, and that the said firm was at that time composed of Nathan Rogers, Nathan Rogers, Jr., and Charles Butler, and that afterwards any changes were made in the partners of the said firm, either by the retirement of one or more of the original members thereof, or by the introduction of a new member therein, and that after such change in said firm, any losses occurred to the said

firm by reason of their putting in the said barque any part of any cargo on the said barque's account, that then the defendant is not responsible in this action for any such loss, unless they further believe, from the evidence, that at or before the time of putting in any such part of any cargo on the said barque's account, the defendant knew who composed the firm so putting in the same, and with such knowledge expressly agreed that he or the said barque would be responsible to the firm so putting in for any loss that might result therefrom.

*Prayer No. 5.*—The defendant, by his counsel, prays the Court to instruct the jury, that all the evidence offered by the plaintiff, as to any charge for interest, are matters within their discretion, in the consideration of the claim of the plaintiff, unless they should find, from the evidence, that there was an express agreement to pay interest, and that in no event should they allow as interest any item of charge for the same, where more than six per cent. per annum has been claimed upon any loan, advance or other indebtedness, unless they should also find, from the evidence, that such item of interest is charged in a foreign country, and that such rate of interest as charged, is allowed by the laws thereof.

*Prayer No. 6.*—The defendant, by his counsel, prays the Court to instruct the jury, that if they believe, from the evidence, that John P. Rogers made sale of the barque "Linda Stewart," without authority; that then he was guilty of an unlawful conversion of the same, and no charge on account of indebtedness in the management of the same should be allowed by them; that if they believe the said barque belonged to James A. Stewart, the defendant, that the said John P. Rogers could not make sale of her without authority from the said Stewart, and if he did so, he was a trespasser; that the agreements (see *ante page* 105) between James A. Stewart and Nathan Rogers, Sen., Na-

Stewart *vs.* Rogers, Surv. Part. of N. Rogers & Co.

than Rogers, Jr., and Charles Butler did not authorize the said Nathan Rogers, Sen., Nathan Rogers, Jr., and Charles Butler, or John P. Rogers, to make sale of the said barque.

*Prayer No.* 7.—That the plaintiff is not entitled to claim commissions for any acts done by him, or those under or through whom he claims, as the agent or agents of the defendant, if the jury should believe, from the evidence, such acts to have been so done; provided they further believe, from the evidence, that in the performance of said acts, the party performing the same was guilty of such negligence or unskilfulness that the defendant derived no benefit therefrom.

The Court made an addition to, and modification of, the 7th prayer, and granted said 7th prayer with the said addition and modification, which is as follows, to wit:

That the plaintiff is not entitled to claim commissions for any acts done by him, or those under or through whom he claims, as the agent or agents of the defendant, if the jury should believe, from the evidence, such acts to have been so done; provided they further believe, from the evidence, that in the performance of said acts the party performing the same was guilty of such negligence or unskilfulness that the defendant derived no benefit therefrom; but if the jury shall believe that in the performance of said acts, the party performing the same therein acted with a proper knowledge of, and a proper regard for, the interests of the defendant, then the said plaintiff is entitled to claim commissions for said acts so done, notwithstanding no benefit may have resulted therefrom to the defendant.

The Court granted the 5th prayer of the defendant, but rejected the 1st, 2nd, 3rd, 4th and 6th, and granted the 7th with the modification as above, from which refusal to grant the said prayers and modification of the 7th, the defendant excepted.

The first exception arises on the motion to exclude the plaintiff's testimony as to the accounts and items therein. referred to. (See *ante page* 108.)

The question or point presented by this exception, is substantially the same with those in the 1st, 2nd and 4th prayers, viz., that in the absence or failure of evidence of an acknowledgment of indebtedness and *express promise* by the defendant to pay the plaintiff, the evidence as to the accounts and the items enumerated in the motion should be excluded, because those accounts were "*res inter alios actæ*," and the causes of action represented by those accounts could not be recovered by the plaintiff, without evidence of such acknowledgment of indebtedness and express promise by the defendant. The prayers above referred to, being based upon the same theory, (that an acknowledgment and express promise are necessary to be proved, to enable the plaintiff to recover,) we will consider them and the first exception together. The position assumed by the defendant in his motion and those prayers, if correctly interpreted, is not tenable. Choses in action, between partners and others, like choses in action between individuals, rest in privity of contract, and, at common law, could be sued on only in the name of the parties thereto, or their legal representatives.

Exceptions to the rigid rule of the common law, growing out of the doctrines of equitable actions and implied assumpsits, have long been recognized and adopted. In *Surtees vs. Hubbard*, 4 *Esp. Rep.*, 203, Lord Ellenborough said: "Choses in action, generally, are not assignable. Where a party is entitled to money, and assigns over his interest to another, the mere act of assignment does not entitle the assignee to maintain an action for it. The debtor may refuse his assent; he may have an account against the assignor, and wish to have his set off; but if there is any thing *like assent* on the part of the holder of the money,

in that case I think this, which is *an equitable action*, is maintainable." The principle of this decision was early incorporated in our own adjudications. In *Allston vs. Contee*, 4 *H. & J.*, 351, it was determined, that where three partners dissolve, and two of them form a second partnership, assuming the debts of the old firm, and, after notice or knowledge of this arrangement, a debtor of the old firm promises to pay the new firm, the latter could sue in its own name, alone, for the debt. This case resembles, in many of its features, that now under consideration. More recently, the decision in 4 *Esp. Rep.* has been cited and expressly approved by the Court of Appeals of this State, in *Barger & Collins*, 7 *H. & J.*, 213. There it was held, that although all the partners must sue on a contract made with the partnership generally, if, after a dissolution, a claim is assigned to one of the parties, the assignee can sue in his own name, by proof that the debtor, with notice of the dissolution and assignment, promised to pay the assignee, and *such promise may be implied from the acts of the debtor*, as well as expressly proved. The general remark of the Court, in *Crawford vs. Burke*, 4 *Gill*, 213, viz., "Prior to the Act of 1829, ch. 51, the assignee of a chose in action, unless it was negotiable by the mercantile law, was obliged to sue in the name of the assignor, or, if he was dead, in that of his personal representative, is to be construed in connection with the subject matter. That was the case of a written assignment, under the Act of 1829, ch. 51, in which the Court held, the assignee, suing in his own name, need neither aver, in his declaration, a promise by the defendant to pay him the account, nor that it was *bona fide* assigned to him. The Court were speaking of the effect of assignment *solely*, at common law, in contradistinction to a written assignment, under the Act referred to, and correctly laid down the general rule, without adverting to the effect of an assignment, parol or written,

followed by assent or assumpsit, express or implied. We think, therefore, the ruling of the Court below, in rejecting the defendant's motion to exclude the testimony as to the accounts and the items thereof, and refusing the defendant's 1st, 2nd and 4th prays, was correct, because they imposed upon the plaintiff the necessity of producing evidence, which the law did not require; it being competent for the jury to find, from the facts proved, whether there was an assignment or transfer of the accounts from the old firm to the new, and whether the defendant assented to it, and promised, expressly or impliedly, to pay the balance to the plaintiff.

The defendant's third prayer refers to the agency established between the original firm of Nathan Rogers & Co. and the defendant, and declares that the transactions connected with the management of the vessels, which occurred subsequently to the formation of the last mentioned firm of Nathan Rogers & Co., are not subjects of charge against the defendant, unless he knew who the partners were who composed the said firm, and with such knowledge recognized the said firm as his agents. In contracts of a continuing nature, as guaranties for advancements to be made, or bonds for the faithful discharge of a duty, questions often arise as to their true extent and operation, when there has been any change of the partners, by the retirement of the old, or the admission of the new one; for instance, whether the guarantee would be liable either to the old firm or to the new, for any such advances or credits, after any such change?

"It has been held, that the guarantor would not be liable therefor; and that no such guaranty ought to be extended beyond the actual import of its terms, but that it ought to be limited to advances and credits made by the original firm only." *Story on Part.*, sec. 245. In *Weston vs. Barton*, 4 *Taunt. Rep.*, 673, 682, Sir James Mansfield said, "It

is not necessary, now, to enter into the reasons of these decisions, but there may be very good reasons for such constructions. It is very probable that sureties may be induced to enter into such a security, by a confidence which they repose in the integrity, diligence, caution and accuracy of one or two of the partners. In the nature of things, there cannot be a partnership consisting of several persons, in which there are not some persons possessing these qualities in a greater degree than the rest, and it may be that the partner dying, or going out, may be the very person on whom the sureties relied. It would, therefore, be very unreasonable to hold the surety responsible after such change." These considerations apply, if possible, more strongly to the agencies of the character in question, where the largest confidence is involved, and the largest capital may be invested.

This prayer is only an assertion of the common law maxim, "*delegatus non potest delegare.*" The agency, like the accounts, might have been transferred with the knowledge and assent of the defendant, from the old to the new firms, but this transfer and assent must be manifested by some evidence that the defendant knew who constituted the new firms, and recognized the said firms as his agents in the management of his vessels, or either of them. Unlike the prayers before mentioned, this did not impose on the plaintiff any illegal requirements; did not prescribe any mode of proof, positive or presumptive, of the knowledge and recognition prior or subsequent, but required the jury to find facts which, it seems to us, were material to the issues, and, as such, should have been granted.

Prayer No. 6, assumes that the plaintiff forfeited all claim to charges for services, management, advancement, &c., if the jury believed he sold the barque without authority. This assumption is erroneous. The plaintiff might, by the course of dealing between the defendant and

himself, have become entitled to a balance on account against the defendant, and the latter have a claim against the former, for the amount of the vessel improperly sold; the conversion or trespass of the plaintiff would not extinguish the debt of the defendant. This defect justified the Court below in rejecting the prayer, without deciding whether the plaintiff had, under the contract, a power of sale for the general balance due on their advancements and liabilities for the vessel. The contract of the 18th October 1852, recites, that to facilitate the better employment of the said vessels, and to secure (the appellants) for any necessary advances that they may make for said vessels, or to James A. Stewart, or any liabilities they may incur on account of said vessels, or order, the said Stewart has signed the necessary certificate to enable them to have the said barque registered in *their* names, and the appellants agreed to surrender said vessels, or the control thereof, to appellee, or his assigns, upon payment of any sum due them, over and above the nett profits, and all advances to said Stewart, and securing them for all liabilities therefor. There is an express reservation of a lien on the vessels for advances to said vessels, or their owner, or to his order, and all liabilities therefor, with the legal title and possession in the plaintiffs. Independently of such a contract, although a mooted question, the better opinion seems to be, that a lien existed in behalf of the ship's husband, for advances. *Story on Part.*, 444, 20. *John. Rep.*, 611, *note* 3. A pawnee, at common law, may file a bill in equity against the pawner, for foreclosure and sale, or he may proceed to sell *ex mero motu*, upon giving due notice of his intention to the pledger. *Story on Bail'ts*, sec. 310. 2 *Kent's Com.*, 453. It appears in this case, that the defendant was notified of the balance against him for advances, and of the plaintiff's intention to sell.

The modification of the 7th prayer, when taken in con-

nection with the points presented, does not seem subject to exception. The proposition presented by the defendant, was, that if the jury believed the vessels were managed so unskilfully that no benefit accrued to the defendant from the services and management of plaintiff, or those through whom he claimed, then the plaintiff was entitled to no commission; an instruction which might, we think, have been safely given, without misdirection. The Court below did not reject this proposition, but added, from abundant caution, a modification not conflicting with it, that if the jury believe that, in the performance of said acts, the party performing the same therein, acted with a proper knowledge of, and a proper regard for, the interests of the defendant, (that is, not unskilfully,) the plaintiff is entitled to claim commissions for acts so done, whether any benefit resulted or not. In other words, that the agent's commission did not depend upon the profitable result of the adventure, if he discharged his duty faithfully. No allusion was made to the instruments under which the agent acted, and no presumption was to be drawn unfavorable to its observance; on the contrary, "a proper regard for the interests of the defendant," implied a strict observance of all the obligations of the agent, written or otherwise.

We concur with the Court below in its rulings on the first exception, and in the rejection of the appellant's 1st, 2nd, 4th and 6th prayers, and modification of the 7th, but think there was error in rejecting the defendant's 3rd prayer, and therefore reverse the judgment and remand the cause upon *procedendo*.

*Judgment reversed and cause remanded.*

(Decided December 3rd, 1862.)