(Decided 28th June, 1867.)

---

JAMES C. DOWLER *vs.* JAMES R. CUSHWA, Insolvent Trustee of JOHN SPRINGER.

*Parol Evidence of the contents of a Bond—Revenue Stamps— Restoring the validity of a Bond by affixing a Stamp during the Trial—Evidence—Recoupment—Set-off.*

Evidence having been offered showing the execution, approval, and delivery of a Trustee's bond, and that the same was lost, and could not be found, although diligent search therefor had been made by the deputy clerk, and the attorney for the plaintiff, in the Clerk's office, where it should have been, parol evidence is admissible to show the contents of the bond.

Dowler *vs.* Cushwa, Insolvent Trustee of Springer.

Where a revenue stamp is necessary to the validity of a Trustee's bond, which has been lost, but the contents of which have been proven by parol evidence, the affixing to a paper setting forth the loss, &c., during the trial, and with the consent of the Court, the requisite revenue stamp, and cancelling it as the law requires, and then filing said paper among the insolvent papers, where the bond should have been, is a substantial compliance with the provisions of the Acts of Congress, and gives the bond validity *ab initio.*

In an action of *trover* by the trustee of an insolvent for the conversion of certain goods and chattels, alleged to have been the property of the insolvent, but claimed by the defendant under an absolute bill of sale to him from the insolvent, executed prior to his application for the benefit of the insolvent laws, it is competent for the defendant to prove that the insolvent was largely indebted to him, and that he was responsible to a considerable amount as surety and endorser for the insolvent, before and at the time of the execution of said bill of sale, and that after the execution, acknowledgment and delivery thereof, and before the application of the insolvent for the benefit of the insolvent laws, all the property embraced in said bill of sale, and the same sued for, passed by delivery into the possession of the defendant, to be held by him as a security to answer for the indebtedness of the insolvent to him; and the exclusion of such evidence is erroneous as depriving the defendant of the benefit of the right of *recoupment* in the estimation of damages by the jury.

The rule pervades both bankrupt and insolvent laws, founded on general principles of equity, that all cross demands, whether connected or independent, provided they be mutual, as between the bankrupt or the insolvent and the creditor, shall be set-off, and the balance only shall be deemed the indebtedness on one side or the other. The assignees take a bankrupt's property in the same condition and subject to the same burthens as the bankrupt himself held it, on the principle that they are not purchasers for a valuable consideration, but as voluntary assignees and personal representatives, and are therefore distinguished from particular assignees.

APPEAL from the Circuit Court for Washington County.

This was an action of *trover* instituted on the 19th of March, 1864, by the appellee, as insolvent trustee of John Springer, against the appellant to recover for the conversion of certain goods and chattels which had belonged to the insolvent, including one-half of the grain growing on the farm of the appellant, and which was occupied by

the insolvent as tenant. On the 31st of December, 1859, the insolvent, in consideration of a large indebtedness to the appellant, who was also liable as his security and endorser to a considerable amount, executed to him an absolute bill of sale of his entire personal property. A defeasance was executed on the same day, but not recorded. The property was delivered to the grantee. In March following the grantor applied for the benefit of the insolvent laws, and one Whetstone was appointed trustee. Four years afterward, in March, 1864, the appellee was appointed trustee in the place of Whetstone, and a few days after his appointment instituted this action.

The pleadings and bills of exceptions are sufficiently referred to in the opinion of the Court.

The cause was argued before Bowie, C. J., Bartol and Crain, J.

*Andrew K. Syester* and *William T. Hamilton*, for the appellant.

The third and fifth exceptions present questions in connection with the trustee's bond, all of which resolve themselves primarily into this. Did this bond require a revenue stamp? As sustaining the affirmative, the following considerations are respectfully submitted: That bonds of this description are not within the meaning of the Act of Congress of 1st June, 1862, exempting "bonds required in legal proceedings." "Bonds for the due execution of the duties of any office, and to account for money received by virtue thereof," require stamps. If the term "office," in this connection, should be interpreted to mean only public offices, that is, offices created by law, and constituting part of the machinery of Government, it is evident that a large class of bonds given for the due execution and performance of an office, and to

account for money received, would not fall within its terms. Such as cashiers of banks. An office may be either public or private. It is defined to be the exercise of a public or private employment. 2 *Bla. Com.*, 36.

The bond in this case is not required by law of the party instituting the "legal proceedings," but is the bond of the appointee of the Court, to an office, with the due performance of the duties of which the party instituting and conducting the proceeding has nothing to do. It is taken to secure the performance of duties that in no manner affect the proceeding instituted by the applicant, who is discharged or not, and whose proceeding is terminated, without the slightest regard to the duties, responsibilities or office of the trustee.

Bonds in legal proceedings are such as the party instituting them is required to give, such as replevin, appeal, injunction bonds, &c., in which proceeding, under another provision, the stamp has already been paid. Without a legal bond the appellee was not, in contemplation of law, a trustee, it is the *bond* and *the perfection of it* that gives him authority to sue. *Winchester vs. Union Bank of Mary-* 2 *G. & J.*, 79.

And assuming that this bond ought to have been stamped, it is in proof that it was *not* stamped at the *time of its execution nor afterwards*, and being lost, it will be presumed to have continued in the same state, that is, unstamped. *Closmadeuc vs. Carrel*, 18 *Com. B.*, 44, (86 *Eng. Com. Law*, 43.) And it was the duty of the appellee setting up the bond to have shown that a proper stamp was upon it. *Crowther vs. Solomons*, 6 *Man. Gran. & Scott*, 763, (60 *Eng. Com. Law*, 762.)

The fourth exception was taken to the rejection of evidence. The defendant below offered to prove that before, and at the time of the execution of the bill of sale, Springer was largely indebted to him, and that he (defendant) was responsible to a large amount as surety,

&c., for Springer, and also *offered to prove the amount of such* indebtedness, as also the extent and amount of such responsibility as surety, &c. And in connection with such offer, proffered further proof to show that before his application, Springer *actually delivered* to him all the property sued for, *to be held by him as security* to answer such indebtedness, &c. And that this property was in defendant's possession, under that agreement, before and at the time of Springer's application. The offer to show this state of facts was rejected. We insist that it was admissible. The property delivered (the same sued for) was under the agreement, a pledge.

At common law this pledge could not be removed on sale for the pledgor's debt. Nothing but his right to redeem could be sold, the pledge remained with the pledgee. *Edwards on Bailments,* 205.

In an action brought for the conversion of the pledge, the pledgee shall have the amount of his debt recouped in the damages. *Edwards on Bailments,* 213, *citing Bac. Abr., Bailment B; Jarvis, Adm'r, vs. Rogers,* 15 *Mass.,* 389; *Stearns vs. Marsh,* 4 *Denio,* 227.

There is nothing in the insolvent system of this State that contravenes this right of the pledge.

For although a trustee may take and *sell the pledge,* he nevertheless takes it, and *must sell it* encumbered with the pledgee's demand. *Alexander vs. Ghiselin,* 5 *Gill,* 138; *Bank of Westminster vs. Whyte,* 3 *Md. Ch. Dec.,* 513.

But here he has laid by for *four years,* and suffered the property to be consumed. It was not only the privilege, but the *duty* of the trustee to have taken this property, sold it and administered the proceeds with reference, in the *first place,* to the pledgee's claim; and this should have been done forthwith, (Code, Art. 48.) He now sues, not for the property, but its value, and this value is to go into his hands unmarked by our demand, but generally to creditors. By this means all the substantial

rights of the pledgee are nullified, without any default on his part. The defendant had a right to recoup his demand in the damages. *Baldwin vs. Porter,* 12 *Conn.,* 473–487 ; *Curtis vs. Ward,* 20 *Conn.,* 204 ; *Pierce vs. Benjamin,* 14 *Pick,* 356 ; *Whitehall vs. Squire, Carthew,* 104 ; *Ewing vs. Blount,* 20 *Alab.,* 694 ; *McEmory vs. Dyer,* 4 *L. R., New Series,* 167, 168 ; *Ward vs. Fellers,* 3 *Mich.,* 286, 287, 288.

*Richard H. Alvey,* for the appellee.

On the second, third and fifth exceptions, there being no question as to the sufficiency of the parol evidence of the contents of the bond, it will be contended :

1st. That the proof offered of the execution, approval, filing and loss of the bond, was ample to let in the secondary evidence of its contents ; and the defendant, in order to let in evidence of the non-stamping of the bond, having proved the making, approval, filing and loss of said bond, cannot be permitted to raise a question as to the admissibility or sufficiency of the evidence offered by the plaintiff *of these facts ;* for by his own proof, and the assumption upon which he proceeded, he admitted and conceded their truth, and thus established the conditions under which the secondary evidence was admissible. *Waters' Lessee vs. Riggin,* 19 *Md. Rep.,* 551, 552.

2d. That the parol evidence of the *contents of the bond* was immaterial, and therefore not injurious to the defendant ; for while it is true that an insolvent trustee has no right to sue, or maintain an action, without first executing and filing an approved bond, yet it is only necessary to show that such bond has been filed and approved ; and the sufficiency of the contents being matter of law, is not for the consideration of the jury, and therefore immaterial as evidence to them. *Winchester, Trustee, vs. The Union Bank of Maryland,* 2 *Gill & John.,* 78.

In this case, it being proved *by both parties* that such

bond had been executed, approved and filed, and that it was lost at the time of trial, nothing more was required as evidence to the jury. But the bond having been since found and certified in this record, whereby it is shown that there was such bond, and that it was duly approved and filed, and remains part of a proceeding in a Court of Record; and it thus appearing that no injury could have been done the defendant by the absence of such bond at the trial; this Court would not reverse even if there were error in regard to admitting evidence of the contents of the bond; for if the bond be sufficient, the contents could in no way have influenced the finding of the jury.

3d. That the bond being required in legal proceedings, was not required to be stamped. *Act of Cong. of June* 1, 1862, *schedule B.*

But, even if it had been subject to the stamp, by the 163 sec. of the Act of June 30th, 1864, it was made valid and effective by applying the stamp in Court, which was done in this instance from abundant caution. *Cooke vs. England, ante,* 14.

On the fourth exception it is respectfully urged, that the appellant having previously offered in evidence the bill of sale to sustain the issue on his part, and in the proffer of the proof rejected, referred to such bill of sale as an existing muniment of title that had been accepted by him, of the property therein mentioned, being the same sued for, it was not competent for him, in order to evade the effect of the unrecorded writing in the nature of a defeasance, to pretend that after the making and acceptance of the bill of sale, he took the property by delivery as a pledge, rather than by the bill of sale itself. Having accepted and produced it, he can set up no title *subsequently* acquired by delivery, and of a different character from that conveyed by the bill of sale; for, as between the parties, the instrument was perfectly good, and conveyed an absolute and unconditional title, and any subse-

quent delivery and acceptance of the property was a ceremony equally destitute of sense as of legal effect.

But suppose it to be the case, that Springer was indebted to the appellant, and that the latter was responsible as surety, endorser and otherwise, according to the proffer, and that the property mentioned in the bill of sale, was, after the execution and acceptance of that instrument, delivered to the appellant, *to be held by him as a security* to answer for such indebtedness and responsibility; the property thus remaining in pledge would be, by the law, devolved upon the insolvent trustee, and he could recover it, or its value. As pledgee the appellant would hold only a special property in the goods with a lien thereon, *as collateral security*, subject to the right of redemption. *Story on Bailm.*, secs. 286, 287, 300, 308, 309, 310; 2 *Kent's Com.*, 578, 581, 582.

And the case differs nothing from that of a mortgagee in possession of the mortgaged chattels, or that of a sheriff in possession of goods seized under execution; and yet in such cases the law is undoubted, that the property devolves on the trustee, and that it is his duty to dispose of it, and out of the proceeds to discharge any lien that may be existing thereon; the policy of the law being to bring all claimants and others interested before one tribunal. In *Alexander vs. Ghiselin*, 5 *Gill*, 178, the Court, in refuting the position taken in that case, that the trustee took nothing but what was found in the possession of the insolvent, said: "If this be so, then the property in the hands of a tenant, *a bailee*, or a trespasser, belonging to an insolvent, is not to be sold—nor a mortgaged estate in possession of a mortgagee, although the mortgaged premises might be worth, in a fair market, tenfold the amount of the debt; a construction which results in such conclusion cannot be adopted."

And in the case of *The Bank of Westminster vs. Whyte*, 3 *Md. Ch. Dec.*, 512, 513, Chancellor Johnson said: "It

is conceded, *and indeed could not be disputed*, since the decision of the case of *Alexander vs. Ghiselin*, 5 *Gill*, 138, that if the transfer of this property is to be regarded as a mortgage or *a pledge* for the security of a debt, that it would be the right and the duty of the insolvent trustee to sell it, and pay off the liens and incumbrances thereon, the opinion of the Court of Appeals in that case being explicit to that effect." And such must be the case to carry out the design and policy of the insolvent law ; for otherwise, " by allowing sheriffs and mortgagees to participate in the administration of the trust, adverse interests are created, delay endangered, if not insured, *and probably different and possibly conflicting tribunals consulted.*" *Zeigler vs. King*, 9 *Md. Rep.*, 335.

Nor can the case of *Lucas vs. Latour*, 6 *H. & J.*, 100, relied on by the appellant, be regarded as an authority to the contrary; for, in the first place, it is not apparent upon what grounds the Court decided, there being no reasons assigned ; and, in the second place, it was a case of usury, the contract being void by the Act of 1704, and where the *only* opportunity or chance of recovering the amount actually due, was by virtue of an equity, sometimes allowed to be availed of *in defence,* and where there is no other way of preventing an entire sacrifice of the party's rights ; and, in the third place, if the case be regarded as going beyond its particular and peculiar circumstances, it is in manifest conflict with more recent decisions.

Indeed, the case of *Fitzroy vs. Gwillim*, 1 *T. R.*, 153, which seems to have been the authority for *Lucas vs. Latour*, has been repeatedly repudiated in Westminister Hall, and especially in its application to an action of trover, which, Chief Justice Tindal says, " is an action of strict law." *Tregoning, Assignee, vs. Attenborough*, 7 *Bing.*, 97 ; *Hargreaves vs. Hutchinson*, 2 *Adol. & Ell.*, 12.

Dowler *vs.* Cushwa, Insolvent Trustee of Springer.

Bowie, C. J., delivered the opinion of this Court.

The appellee, as trustee under the insolvent laws, sued the appellant in *trover* for the conversion of certain goods and chattels, including wheat and oats and other perishable articles. The *nar.* contained two counts: in the first, the conversion was laid before the appellee's appointment as trustee, but after the petition; in the second, the conversion was charged to have been after the appellee's appointment. The appellant pleaded not guilty, on which issue was joined. Five bills of exceptions were taken by the appellant—four to the rulings of the Court excluding or admitting testimony, and the fifth to the rejection of a series of prayers renewing in another form the objection to the evidence raised in the third exception.

No point is presented on the first bill of exceptions by the appellant in his brief, and it is therefore unnecessary to notice it. The second bill of exceptions was taken to the sufficiency of evidence offered by the plaintiff and admitted by the Court below as secondary evidence of the execution, approval, and delivery of the bond of the plaintiff as trustee, and of the contents of this bond. The circumstances given in evidence, raised the presumption that the bond, if it required a stamp, had been executed and stamped, and diligent search having been made by the deputy clerk in the clerk's office without finding the same, parol evidence was properly admitted of its contents. The fact that the bond has since been found without a stamp, does not in any manner impeach the propriety of the admission of parol proof, but shows only the fallibility of the best devised maxims of presumptive evidence.

The third and fifth bills of exception relate to the necessity of a revenue stamp, to the legal validity of the bond of the trustee in insolvency, and, consequently, to his capacity to sue, the appellant insisting the bond in

Dowler *vs.* Cushwa, Insolvent Trustee of Springer.

question is not within the exception " of bonds required in legal proceedings" under the Act of Congress of the 1st June, 1862. In whatsoever view we regard these exceptions, we cannot find any ground for reversing the action of the Court upon them. If, as interpreted by the Court below, the bond is within the exception referred to, the ruling was right; if not, the affixing to a paper, setting forth the loss, &c., of the bond, during the trial, with the consent of the Court, the requisite revenue stamp, and cancelling it as the law required, and then filing said paper among the insolvent papers, where the bond should have been, was a substantial compliance with the provisions of the Acts of Congress, and gave the bond validity " *ab initio.*"

The evidence embraced in the fourth bill of exceptions was offered to prove that Springer, the insolvent, was, prior to his application for the benefit of the insolvent laws, indebted to the defendant, who was also liable as surety for him to a large amount, and that after the execution of the bill of sale, and before his application, all the property mentioned in the bill of sale and sued for by the plaintiff, was actually delivered to the defendant, to be held by him as security for the indebtedness of the insolvent to the defendant, and his liability as surety, and that before, and at the time of the insolvent's application, the defendant was in possession of the property, exercising control over the same, by virtue of the said delivery.

This testimony established the relation of bailor and bailee between the insolvent and defendant, whose rights as such bailee were necessarily involved in the issue joined in the cause.

The liability of a defendant receiving property under such circumstances is modified by law. He is not absolutely responsible for its value. " If the pawn be lost by casualty or unavoidable accident, or superior force, or

perishes from intrinsic defect or infirmity, the pawnee is not answerable, if the loss from such causes be duly made to appear, and no act was done or omitted to be done inconsistent with the pawnee's duty, for he was only bound to bestow ordinary care and diligence. *2d Kent's Com.*, 579. "The pawnee may also sell without judicial process upon giving reasonable notice to the debtor to redeem. *Ibid*, 583. The pledge covers not only the debt, but the interest upon it and all necessary expenses that may have attended the possession of the pledge, and the lien may, by agreement, be created to extend to subsequent advances.

The appellee relying upon certain general expressions of this Court, in the case of *Alexander vs. Ghiselin*, 5 *Gill*, 178, and others cited by Chancellor Johnson, in 3 *Md. Ch. Dec.*, 508, resists the admission of the evidence as incompetent for the purpose of showing a right to the possession of the property. The language used in those cases is to be construed in connection with the object of the suits and the condition of the property. In both, the property existed in specie, and the contest was chiefly about the distribution of the proceeds when sold; the right to make the sale was incidentally, but necessarily involved.

These cases should not be stretched beyond their proper bounds to control others dissimilar in circumstance and varying in principle.

The present is an action of *trover* for damages for the conversion of property. If the right of possession was immediately involved, there would still be room to doubt what, in that aspect was the meaning of the Court, in the case referred to, in using this language. "The true construction, then, of the Act of 1805, and the supplementary Acts relating to insolvent debtors, requires the trustee to take into his possession all the estate and effects to which the insolvent *had the right of possession* at the

time of *his application,* and to sell, etc., and to pay off the liens and encumbrances thereon.

These goods were not in the custody of the law at the time the bailee's rights attached ; they were delivered to him several months prior to the insolvent's petition, and were in the bailee's possession at the time of the petition. This case is not within the rule laid down in *Buckey vs. Snouffer,* 10 *Md. Rep.,* 155. The *"custodia legis"* commences with the petition ; all *bona fide* liens for a valuable consideration antecedently attached, must be respected in an action for the value of the property.

At common law goods pawned or pledged are not liable to be taken in execution in an action against the pledgor. The possession of the pledgee could not be disturbed, because the officer could acquire no greater interest in or control over the property than that possessed by the defendant, against whom he held the process of the Court. *Marsh vs. Laurence,* 4 *Cow.,* 461 ; *Scott vs. Scholey et al.,* 8 *East.,* 467 ; *Metcalf et al. vs. Scholey et al.,* 5 *Bos. & Pull,* 461.

In consequence of this, statutes have been passed in some of the States giving a right of execution against the pledgor's interest, subject to the lien of the pledgee. *Edwards on Bailments,* 205. But this sale does not in any manner impair the right of the pledgee. The purchaser's right of redemption is the same exactly, and dependent upon the same terms and conditions as that of the pledgor. "He is entitled to the possession of the goods on complying with the terms and conditions of the pledge ; and when these cannot be complied with until some future event has occurred, the pledge must of course be redelivered to the hands of the pledgee." *Ibid,* 207. Thus the law stands, whilst the pledge remains *"in statu quo."* Where the property has been unlawfully detained, or withheld, or converted or changed by the pledgee, corresponding rights and liabilities ensue. Although there is

a remedy in equity in certain cases, the usual recourse is to an action of replevin or trover. "If the goods pledged have been wrongfully sold by the pledgee, a recovery may be had against him in a suit in the nature of an action on the case, or in *assumpsit* to recover the value of the property, and if the debt for which the pledge is deposited in security has not been paid, the pledgee may recover the amount by way of reduction of damages." *Stearns vs. Marsh,* 4 *Denio,* 232 ; *Jarvis, Adm'r, vs. Rogers,* 15 *Mass.,* 389 ; *Bac. Abrid. Bailment.*

The right of a pawnee creditor to the deduction of the amount of his claim against the trustee of an insolvent pawnor is demonstrated with great force of illustration and authority in the case of *Receivers vs. The Patterson Gas Light Company,* 3 *Zabriskie,* 291.

The general conclusion is thus announced : "The rule pervades both bankrupt and insolvent laws founded on general principles of equity, that all cross demands, whether connected or independent, provided they be mutual, as between the bankrupt or the insolvent, and the creditor, shall be set-off, and the balance only shall be deemed the indebtedness on one side or the other. The assignees take a bankrupt's property in the same condition, and subject to the same burthens, as the bankrupt himself held it. On the principle that they are not purchasers for a valuable consideration, but as voluntary assignees and personal representatives, and are therefore distinguished from particular assignees."

This Court, in the late case of *The Baltimore Marine Insurance Company vs. Dalrymple,* (April Term, 1866, M.S.,) which was an action of trover by bailor *vs.* bailee, for the conversion of stock, said :

"We consider it perfectly clear that the view taken by the Court below on the question of recoupment was correct ; and that in ascertaining the damages, the amount of the debt due the defendant, to secure which the stock

and other collaterals were pledged, ought to be deducted. The law is so expressly stated by Story in his work on Bailments, secs. 315, 349. It is supported by the authorities cited by him ; and is consistent with the general doctrine of recoupment established in modern cases and recognised by this Court in *Abbott vs. Gatch,* 13 *Md. Rep.,* 314 ; *Stewart vs. Rogers, &c.,* 19 *Md. Rep.,* 117, 118.''

The exclusion of the evidence offered in the appellant's fourth bill of exceptions, deprived him of the benefit of the right of recoupment in the estimation of damages by the jury, and was therefore erroneous. The judgment of the Court below must therefore be reversed, and *procedendo* awarded.

*Judgment reversed*

*and procedendo awarded.*

(Decided 28th June, 1867.)